(No. 6542.   July 7, 1938.)

GEORGE RABIDEAU, a Minor, by GEORGE RABIDEAU, His Natural Guardian, Respondent, v. JOHN W. CRAMER, Employer, and AETNA CASUALTY AND SURETY COMPANY, Surety, Appellants.

[81 Pac. (2d) 403.]

Weldon Schimke, for Appellants.

No appearance for Respondent.

HOLDEN, C. J.—John W. Cramer is a practicing attorney at law, renting and maintaining offices in the city of Lewiston, Idaho. By agreement with the owner of the building in which his offices are located, janitor service is supplied by Cramer himself who employs a janitor to do all his janitor work except washing windows. Whenever the windows needed washing, Cramer "picked up somebody that would come along and let them do it." The windows were washed "sometimes once every six months, sometimes every two months. Whenever we (Cramer) get around to having it done."

George Rabideau, a minor, about 15 years of age, washed windows in three different buildings for a period of about two weeks. Then, and on March 8, 1937, he, with another minor, entered Cramer's office with a bucket and some rags and asked Cramer's secretary for a job washing windows. She went into an adjoining room and consulted Cramer about the matter and he said "Yes, it would be all right." Returning, the secretary agreed to pay the boys 25¢ a window for washing four windows. While washing the windows, young Rabideau fell and broke a leg and was immediately taken to a hospital. Hospitalization for the boy amounted to $68.10, and medical attendance, $75.00.

July 24, 1937, claim for compensation was filed and November 5, 1937, a hearing was had before the Industrial Accident Board. December 14, 1937, the Board awarded compensation for hospitalization and medical attention in the sum of $143.10, from which award Cramer and his surety appeal.

Respondent was not represented at the hearing of the appeal of this cause nor has he filed a brief. We have, nevertheless, carefully investigated the law bearing upon the right of respondent to recover compensation.

Appellants contend minor Rabideau's employment was "casual" and, consequently, under the provisions of section 43–904, I. C. A., he is not entitled to compensation.

■■ At the threshold of the consideration of appellants' contention, we point out that the word "casual," as used in the statute (sec. 43–904, *supra*) applies to the employment and not to the employee (*Dillard v. Jones*, 58 Ida. 273, 72 Pac. (2d) 705), and that time has confirmed the wisdom of the conclusions, early arrived at by the English authorities, that no hard-and-fast definition of the term "casual" is advisable (Honnold on Workmen's Compensation, vol. 1, p. 199, sec. 62), and that each case must be decided quite largely upon its special facts (*Dillard v. Jones, supra*).

Many cases may be found defining a "casual" employee, "casual" employment, and "regular" employment, but they are not very helpful here because the courts define those terms in the sense in which they are used in the particular statute under consideration, and no two statutes are identical. As this court said in *Flynn v. Carson*, 42 Ida. 141, 243 Pac. 818, little more is gained from the adjudicated cases than the summary of the federal court in *Western Union Tel. Co. v. Hickman*, 248 Fed. 899, 161 C. C. A. 17, that "If the hiring be incidental or occasional, for a limited and temporary purpose, though within the scope of the master's business, the employment is 'casual' and covered by the exception." We then quoted with approval the definition given the term "casual employment" by the Supreme Court of Wisconsin in *Holmen Creamery Assn. v. Industrial Com.*, 167 Wis. 470, 167 N. W. 808, where that court in construing a statute afterwards amended but which excluded "any person whose employment is but casual or is not in the usual course of the trade," said:

"Hence, an employment that is only occasional, or comes at uncertain times, or at irregular intervals, and whose happening cannot be reasonably anticipated as certain or likely to occur or to become necessary or desirable is but a casual employment within the meaning of the statute. It is one that

arises occasionally or incidentally and is not a usual concomitant of the business, trade, or profession of the employer.''

The facts in the Flynn case, *supra,* were substantially as follows: That an autobus line was operated regularly between Mullan and Wallace; that it was the custom of the proprietors of the line to run one or more extra stages from Wallace to Mullan or from Mullan to Wallace on Saturday nights; that for a while Flynn was a regular driver but, having been discharged, immediately thereafter took up employment as a barber; that, nevertheless, he was available to the proprietors as an extra driver; that at least one extra driver, and sometimes two, were customarily employed on Saturday nights; that one of the proprietors of the line went to the barber shop where Flynn was employed and asked him to go to Wallace that evening and drive a bus back; that Flynn was on his way from Mullan to Wallace to drive the bus back when the bus in which he was riding left the road and Flynn was killed, it being conceded that Flynn was an employee going to his work at the time of the accident.

In pointing out that Flynn's employment was not ''casual,'' when tested by the definition of that term adopted from Wisconsin, this court said:

''We must not confuse the terms 'extra driver' and 'extra trips.' This was a regular trip customarily made Saturday nights in addition to other regular trips, and reasonably to be anticipated, expected and counted upon. It surely cannot be contended that one who employs regular automobile drivers, and, with regularity and custom, employs an extra driver upon Saturday nights, would be excusable in not providing insurance for an extra driver who, according to the evidence, is contemplated to have been employed every Saturday night. The amount of money paid regularly each Saturday night to an extra driver, at least to one, where the evidence shows there was one or more, would not be left out of, or omitted from, the estimated pay-roll, or its omission excused on a plea that such employment was casual. Tested by the necessary rules of construction, the employment in this case was not merely incidental nor occasional, without regularity or for a limited and temporary purpose, but was a regular, recurring employment

each Saturday night, which was customary and to be anticipated with such regularity, and with its hazard a part of the overhead of the industry, even though the individuals who might perform the work were not steadily engaged for the purpose. It therefore belongs to the category of things to be expected and provided for.''

In the case at bar, the employment was uncertain, occasional, at irregular intervals, without regularity, and for a limited and temporary purpose. In the Flynn case, *supra,* the extra bus service on Saturday nights, between Mullan and Wallace, was certain, regular, and permanent, reasonably to be anticipated, expected and counted upon. In fact, that service was as certain and permanent and just as reasonably to be expected and counted upon, as the regular service between Mullan and Wallace.

Where evidence in a compensation case is undisputed, as in this case, it becomes a question of law for the reviewing court to determine whether a proper application of the law has been made to the evidence. (*Horst v. Southern Idaho Oil Co.,* 49 Ida. 58, 286 Pac. 369.)

Tested by the definition of ''casual employment'' approved and applied in the Flynn case, *supra,* we conclude that the employment in the instant case was ''casual,'' and, consequently, not compensable.

Award reversed. Costs awarded to appellants.

Ailshie and Givens, JJ., concur.

BUDGE, J., Concurring.—I concur in the conclusions reached in the foregoing opinion, basing my concurrence upon the case of *Orr v. Boise Cold Storage Company,* 52 Ida. 151, 12 Pac. (2d) 270, and authorities therein cited.

MORGAN, J., Dissenting.—I. C. A., sec. 43–904, being a part of the Workmen's Compensation Law, contains the following:

''None of the provisions of this act shall apply to: . . . .
''3. Casual employment; . . . . ''

As pointed out in the foregoing opinion, the word ''casual,'' as used in the statute applies to the employment and not to

the employee. Undoubtedly the exclusion of "casual employment" has been provided for because the employer could not foresee the necessity for it at the time of contracting for his industrial accident insurance and, therefore, could not be expected to protect his employee, engaged in such employment, by insurance, from the hazards thereof.

It seems to me, *Dillard v. Jones*, 58 Ida. 273, 72 Pac. (2d) 705, should be controlling in this case. In that case the employer was a real estate broker who, as a part of his real estate business, purchased a house and repaired it in order to make it available for rent or for sale. One of his employees, a carpenter, engaged in repairing the house, fell and was injured. In that case we said:

"The record discloses appellant made his living by being a real estate broker or agent and he says it was in connection with this business and in order to sell or rent the property that he did the remodeling. As to him therefore the employment was not casual because, so far as the record shows, it was a regular and customary thing for him to do."

In this case appellant, Cramer, was engaged in the law practice. It was necessary that janitor work be done, including window washing, in order for him to carry on his profession in his office. Window washing was no less necessary than any other part of the janitor service. Mr. Cramer's rental contract placed the duty on him to provide the janitor service. The fact that he split this service up and employed one person, or persons, to do certain parts of it, and others to clean the windows does not render the window cleaning any less an indispensable part of the business he was engaged in for profit. As said in *Flynn v. Carson*, 42 Ida. 141, 151, 243 Pac. 818, 821, "It 'therefore belongs to the category of things to be expected and provided for.'"

In this case, when the employer contracted for his industrial accident insurance he knew it would be necessary for him to have janitor service, including the cleaning of his office windows. The employment was not casual; was a part of the business in which he was engaged for profit, and injury sustained by accident, arising out of and in the course of it, should be held to be compensable.